UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES FOR THE MASON TENDERS DISTRICT COUNCIL WELFARE FUND, PENSION FUND, ANNUITY FUND AND TRAINING PROGRAM FUND, *et al.*,

Petitioners,

-v-

JME ENVIRONMENTAL CORP.,

Respondent.

26 Civ. 6367 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Petitioners[1] seek to confirm an arbitral award, issued on July 31, 2025, against Respondent JME Environmental Corp. ("JME"). JME has not opposed the Petition or otherwise appeared in this action. For the reasons explained below, the Court grants the Petition.

## I. Background[2]

### A. The Relevant Agreements

The Funds are employee benefit plans and multiemployer plans whose purpose includes providing fringe benefits to eligible employees on whose behalf employers contribute pursuant to collective bargaining agreements. Savci Decl. ¶ 3. Each of the Funds is established and

[1] This Opinion and Order uses the term "Petitioners" to refer to (1) Trustees for the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program Fund (the "Funds"); (2) Anna Gutsin, in her fiduciary capacity as Director of the Funds; and (3) David Bolger, as Business Manager of the Mason Tenders District Council of Greater New York and Long Island.

[2] The following facts are taken from the Declaration of Haluk Savci, Dkt. 10 ("Savci Decl."), and attached exhibits.

maintained pursuant to an Amended and Restated Agreement and Declaration of Trust (the "Trust Agreement"). *Id.*; *see* Savci Decl., Exh. 3 ("Trust Agreement"). The Masons Tenders District Council of Greater New York and Long Island (the "Union") is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 185(b), 142(1), and JME is an employer within the meaning of 29 U.S.C. § 152(2). *See* Savci Decl. ¶¶ 5, 7.

At all relevant times, JME was bound by the Project Labor Agreements with the New York City School Construction Authority (the "PLA"), as well as the Mason Tenders District Council Independent Agreement (the "CBA"). *Id.* ¶¶ 7, 11; Savci Decl., Exh. 2 ("PLA"); *see* Dkt. 1 ("Petition") ¶ 3. The PLA and the CBA "establish[] the terms and conditions of employment for all bargaining unit employees of a signatory contractor" such as JME. Savci Decl. ¶ 11. The PLA further bound its signatories to the Trust Agreement, which requires employers to pay weekly contributions for all covered employees. PLA art. 11, § 2(C) ("The Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds . . . ."); Trust Agreement art. IX, §§ 9.1-9.4 (setting forth terms for the rate, effective date, payment mode, and due date for employer contributions); *see* Savci Decl. ¶ 11.

The PLA permits its parties to submit to arbitration disputes and claims that are not resolved through the agreement's grievance procedures. PLA art. 9, § 1. The PLA further provides that "[t]he decision of the Arbitrator shall be final and binding on the involved Contractor, Local Union and employees and the fees and expenses of such arbitrations shall be borne equally by the involved Contractor and Local Union." *Id.*

Article 9 of the Trust Agreement outlines the processes by which an audit may be conducted of an employer's records, as well as how arbitration may be initiated to obtain damages

for unpaid contributions. The Trust Agreement provides that "[t]he Board [of Trustees], a Certified Public Accountant selected by the Board, or such other representative or representatives duly authorized by the Board, may examine and audit payroll, employment, and any other pertinent records of any Employer, as the Trustees deem necessary (and as set forth in the applicable Collective Bargaining Agreement), whenever such examination is deemed necessary or advisable by the Board or the Fund Director in connection with the proper administration of the Fund." Trust Agreement art. IX, § 9.7(a). The Trust Agreement further provides that the Board may take legal action to collect delinquent contributions to the Funds, including "the right, in its sole and absolute discretion, to determine whether to initiate arbitration proceedings against a delinquent Employer." *Id.* art. IX, § 9.8. The Trust Agreement further identifies the following damages that a Trust Fund is entitled to in any legal action commenced by the Trust Fund, the Board, or the Fund Director for unpaid contributions: "all Unpaid Contributions due and payable"; "interest on such Unpaid Contributions (computed in accordance with the method set forth in Section 9.5(a) of this Article IX)"; "interest on the Unpaid Contributions as and for liquidated damages"; "all attorneys' fees and costs of the action, reasonable expenses attributable to any audit of the Employer's records with respect to Unpaid Contributions or payments, and any other related expenses"; and "such other legal or equitable relief as the court deems appropriate." *Id.* art. IX, § 9.9.

**B. Arbitration Proceedings**

A dispute arose based on JME's failure to make fringe benefit contributions and other contributions to the Trust Funds for work performed by JME employees from February 1, 2020 through July 28, 2024. Petition ¶ 13; Savci Decl. ¶ 8. The Funds' auditors performed consecutive books and records examinations of JME covering, first, the period of February 1, 2020 through September 25, 2022, and, second, the period of September 26, 2022 through July 28, 2024. Savci

Decl. ¶ 8; Savci Decl., Exh. 7 ("Audit Findings"). On May 30, 2025, the Funds, as the authorized collection agents for dues and contributions, served JME with a notice of arbitration concerning JME's failure to pay these required contributions. Savci Decl. ¶¶ 11, 19, Exh. 6 (Amended Notice of Intention to Arbitrate); *see* Trust Agreement art. IX, § 9.8.

On June 30, 2025, Arbitrator Joseph Harris conducted a remote hearing, during which the Funds submitted evidence in support of their claims. Savci Decl. ¶¶ 20-21. Amanda Vera, JME's President, appeared for JME at the hearing. *Id.* ¶ 20; *see* Savci Decl., Exh. 1 ("Award") at 1. Ms. Vera did not contest any of the Funds' audit findings and submitted no evidence to counter the Funds' claims for monies owed. Savci Decl. ¶ 21; *see* Award at 2. On July 31, 2025, Arbitrator Harris issued his Award in favor of the Funds, finding that JME had failed to make the required contributions and ordering JME to pay the Funds a total of $332,283.01. Award at 2-3; *see* Savci Decl. ¶ 22. Based on the Funds' evidence, and in particular the Audit Findings for the first examination period, Arbitrator Harris found that, for the period of February 1, 2020 through September 25, 2022, JME owed $28,018.37 in delinquent fringe benefits and associated items, consisting of the following:

Delinquent Contributions for Fringes: $16,156.58
Dues and Political Action Committee Contributions: $5,916.77
Current Interest: $2,972.51
ERISA Penalty (liquidated damages): $2,972.51

Award at 2. Based on the Funds' evidence, specifically the Audit Findings for the second examination period, Arbitrator Harris found that, for the period of September 26, 2022 through July 28, 2024, JME owed $298,658.83 in delinquent fringe benefits and associated items, consisting of the following:

Delinquent Contributions for Fringes: $194,744.57
Dues and Political Action Committee Contributions: $30,228.76
Current Interest: $31,293.50

ERISA Penalty (liquidated damages): $31,293.50
Audit Fees (actual): $11,098.50

*Id.* at 2. Arbitrator Harris further awarded the Funds $2,905.81 in interest from April 1, 2022 through September 30, 2024, $500 in attorneys' fees, and $2,220 in arbitrator's fees. *Id.* at 3.

Since then, JME has neither contested the Award nor filed any motion to vacate it. Savci Decl. ¶ 23. Nor has JME made any payments toward the Award, with the full amount of $332,283.01 remaining due. *Id.* Petitioners filed the instant Petition on July 27, 2026, to confirm the Award under Section 301(c) of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185. Dkt. 1. JME has not opposed the Petition or otherwise appeared in this action.

**II. Legal Standard**

An unanswered petition to confirm an arbitration award is generally treated as an unopposed motion for summary judgment. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (explaining that "generally a district court should treat an unanswered removed petition to confirm/vacate as an unopposed motion for summary judgment"). Under this approach, "'the petition and the accompanying record' become 'a motion for summary judgment'" evaluated under the usual standard under Federal Rule of Civil Procedure 56. *Trs. of UNITE HERE Nat'l Health Fund v. JY Apparels, Inc.*, 535 F. Supp. 2d 426, 428 (S.D.N.Y. 2008) (quoting *D.H. Blair & Co.*, 462 F.3d at 109); *see* Fed. R. Civ. P. 56.

Summary judgment under Rule 56 is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom

summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The movant bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If met, the burden shifts to the non-movant "to present evidence sufficient to satisfy every element of the claim." *Id.* The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). The non-movant must present more than a mere "scintilla of evidence." *Anderson*, 477 U.S. at 252.

This standard applies even to unopposed motions for summary judgment. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). Therefore, to confirm an unopposed petition, the court must decide whether the undisputed facts establish that the petitioner is entitled to judgment as a matter of law. *Trs. for Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Odessy Constructioncorp*, No. 14 Civ. 1560 (GHW), 2014 WL 3844619, at *2 (S.D.N.Y. Aug. 1, 2014) ("[L]ike unopposed summary judgment motions, unopposed confirmation petitions 'must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" (quoting *D.H. Blair & Co.*, 462 F.3d at 110)).

## III. Discussion

Petitioners seek confirmation and enforcement of the arbitrator's Award of $332,283.01 and post-judgment interest at the statutory rate. Petition ¶ 18.

Section 301 of the LMRA provides federal courts with jurisdiction to decide petitions to confirm labor arbitration awards. 29 U.S.C. § 185(c). Confirming an arbitration award under the LMRA, like under the Federal Arbitration Act ("FAA"), entails only "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted) (applying the FAA); *see Trs. for Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. PM Contracting Co.*, No. 18 Civ. 6563 (KPF), 2019 WL 1557114, at *2 n.3 (S.D.N.Y. Apr. 10, 2019) (explaining that although "[t]he LMRA, not the [FAA], governs" review of a petition to confirm under the LMRA, the FAA remains "useful as a source of principles . . . in the context of a petition to confirm or vacate an arbitration award" (internal quotation marks omitted)); *1199 SEIU United Healthcare Workers E. v. Lily Pond Nursing Home*, No. 07 Civ. 408 (JCF), 2008 WL 4443945, at *3 (S.D.N.Y. Sept. 29, 2008) ("The FAA is particularly useful in the context of a petition to confirm or vacate an arbitration award because both the FAA and the LMRA allow only limited judicial review of arbitration decisions.").

Judicial review of the merits of an arbitration award is "severely limited so as not unduly to frustrate the goals of arbitration, namely, to settle disputes efficiently and avoid long and expensive litigation." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metro. Fine Mill Work Corp.* ("*Metro. Fine Mill*"), No. 14 Civ. 2509 (PAE), 2015 WL 2234466, at *3 (S.D.N.Y. May 12, 2015) (internal quotation marks omitted). Particularly in the LMRA context, an arbitration award should be confirmed "as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund*

*& Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Dejil Sys., Inc.*, No. 12 Civ. 5 (JMF), 2012 WL 3744802, at *2 (S.D.N.Y. Aug. 29, 2012) (internal quotation marks omitted). Under the "extremely deferential standard of review" that courts must apply, "only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award," which may be inferred from the record. *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 378-79 (2d Cir. 2023) (citation modified); *see also Landy Michaels Realty Corp. v. Loc. 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) ("[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." (internal quotation marks omitted)). An arbitration award cannot stand, however, "[i]f it is clear that an arbitrator has exceeded his authority." *Abram Landau Real Est. v. Bevona*, 123 F.3d 69, 74 (2d Cir. 1997) (internal quotation marks omitted).

Arbitrator Harris's decision to award $332,283.01 easily satisfies these permissive standards. First, Arbitrator Harris "acted within the scope of the authority granted him by the parties" under the PLA and the Trust Agreement. *Metro. Fine Mill*, 2015 WL 2234466, at *4; *see* PLA art. 9, § 1 (permitting the parties to submit to arbitration disputes and claims that are not resolved through the agreement's grievance procedures); Trust Agreement art. IX, § 9.8 (providing that the Board of Trustees can take legal action to collect delinquent contributions to the Funds, including "the right, in its sole and absolute discretion, to determine whether to initiate arbitration proceedings against a delinquent Employer"); *see also* PLA art. 11, § 2(C) ("The Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to Program Work done under this Agreement and only for those

employees to whom this Agreement requires such benefit payments."). Consistent with that authority, the Funds initiated arbitration and Arbitrator Harris conducted a hearing at which the parties were allowed to present evidence and analysis. *See* Savci Decl. ¶¶ 20-21.

Arbitrator Harris' decision is also supported by the record, including audits for the periods of February 1, 2020 through September 25, 2022 and September 26, 2022 through July 28, 2024, as well as the Funds' deficiency reports, which reflected the unpaid fringe benefits, dues, political action committee contributions, accrued interest, and audit fees. *See* Audit Findings; Award at 2. The arbitrator also awarded damages within the parameters of those authorized under the Trust Agreement. Arbitrator Harris ordered JME to pay audit costs, the ERISA penalty of the amount of interest owed on the unpaid principal (liquidated damages), legal fees, and arbitration costs, in accordance with the Trust Agreement. Award at 2-3; Trust Agreement art. IX, § 9.9; *see Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. PMM Cranes LLC*, No. 24 Civ. 3187 (JGK), 2024 WL 4388276, at *3 (S.D.N.Y. Oct. 3, 2024) (granting a petition to confirm an arbitration award where "the arbitrator found that substantial and credible evidence supported the determination that the respondent owed the petitioners delinquent contributions" under the agreement between the parties) (internal quotation marks omitted). Although JME's President, Ms. Vera, appeared at the arbitration hearing, she did not contest any of the Funds' findings and submitted no evidence to counter the claim for monies owed. Savci ¶ 21; Award at 2; *see Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Baroco Contracting Corp.*, No. 24 Civ. 1898 (DEH), 2024 WL 4519836, at *2 (S.D.N.Y. Oct. 17, 2024) (granting a petition to confirm an arbitration award where the "Respondent did not . . . contest Petitioners' independent estimated audit—which determined that Respondent failed to make required remittances"). Finally,

Petitioners timely filed the instant Petition to confirm the Award,[3] and the Award has not been vacated, modified, or corrected.

Thus, the Court concludes that there is no genuine dispute of material fact and that Petitioners are entitled to judgment as a matter of law confirming the Award.

## IV. Conclusion

For these reasons, the Court grants the Petition to confirm the Award. The Clerk of Court is respectfully directed to enter judgment in favor of Petitioners and against Respondent JME Environmental Corp. in the amount of $332,283.01. Post-judgment interest[4] shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full. The Clerk of Court is further respectfully directed to close this case.

SO ORDERED.

Dated: November 25, 2026
New York, New York

JOHN P. CRONAN
United States District Judge

[3] "Since LMRA § 301 does not specify a statute of limitations for commencing an action to confirm or vacate an arbitration award, federal courts borrow the most appropriate state statute." *1199 SEIU United Healthcare Workers E.*, 2008 WL 4443945, at *2 (citing *Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998)). Under New York Civil Practice Law and Rules Section 7510, the prevailing party in an arbitration must commence an action to confirm an award within one year of delivery of the award.

[4] Under Section 1961, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citation modified). Application of Section 1961 extends "equally to a federal judgment confirming an arbitration award." *AXA Versicherung AG v. New Hampshire Ins. Co.*, 962 F. Supp. 2d 509, 512 (S.D.N.Y. 2013) (citing *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989)). Petitioners are therefore entitled to post-judgment interest at the federal statutory rate pursuant to Section 1961, to be calculated from the date of entry of this judgment.